UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JOSEPH OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:23-cv-00042-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DOW SILICONES CORPORATION, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Joseph Owens worked for Dow Silicones Corporation.  After purportedly messaging a coworker sexually suggestive messages, he was terminated for violating the company's sexual harassment policy.  He now alleges that he was actually the victim of impermissible sex discrimination by his supervisors, who allegedly refused to view evidence Owens viewed as exculpatory.  He also alleges that he was the victim of impermissible retaliation for complaints he made about his treatment, both before and after termination.  Defendant Dow Silicones Corporation has now moved for summary judgment on both of Owens' claims.  For the reasons that follow, the Defendant's Motion for Summary Judgment **[R. 21]** is **GRANTED.**

**I**

Joseph Owens began working at Dow Silicones' Carrollton, Kentucky plant as an Associate Site Logistics Technician in April 2022.  [R. 21-1 at 3.]  As part of being a Dow employee, Owens was expected to abide by Dow's policies, including its policy on sexual harassment.  *Id*. at 5.  The parties dispute whether Owens' time at Dow was "riddled with issues" as Dow characterizes it, but the evidence is mixed.  Certainly, Owens received some criticism

from leadership over minor incidents, [R. 21-2 at 31-38], but his performance review at the end of 2022 was generally quite positive. *Id*. at 40-41. The dispute that led to this case began at the end of 2022.

In late December 2022 Owens worked a shift with Gabby Bowen, a Kelly Services contractor filling in for another contractor who was out. [R. 21-1 at 5.] Dow contracts with Kelly Services, a temporary employment agency, to fill various needs and roles throughout its operations. [R. 21-2 at 4.] These contractors often work side-by-side with Dow employees. *Id*. After working with Owens, Bowen raised concerns about working with him to Owens' supervisor Josh Fulton. [R. 21-3 at 2-3.] Bowen reported to Fulton that Owens had made remarks about her body, friended her on Facebook, and then propositioned her for sex over Facebook messages. *Id*. Also present when Bowen reported her concerns about Owen was fellow employee Jomeka Dickerson, who reported to Fulton that Owens had engaged in "unsettling behavior" and that she herself had concerns with his interactions with young women at the plant. *Id*.

Following this report, Dow launched an investigation into Bowen's complaint of sexual harassment by Owens. [R. 22-3 at 1-4.] The assigned investigator was Kathleen Reder. [R. 21-4 at 3.] As part of her investigation, Reder interviewed both Owens and Bowen. *Id*. at 5-9. In her interview with Owens, he confirmed that he had friended and talked to Bowen on Facebook, suggested upon prompting that he may have discussed sexual issues with Bowen (though in his view she had brought it up), and denied ever messaging her asking for sex. *Id*. at 6-7. During the interview Reder took issue with Owens demeanor, including his wearing sunglasses. *Id*. Owens' "sunglasses" are actually prescription glasses that appear to be dark, a fact he apprised Reder of during the interview. [R. 21-4 at 7; R. 21-1 at 8.] Reder also interviewed Bowen, who

recounted her concerns about Owens.  [R. 21-4 at 7-9.]  Bowen told Reder that Owens made comments about Bowen's body, added her on Facebook, and then sent her messages asking for sex.  *Id*. at 8.  Upon Reder's request Bowen provided her with copies of the Facebook messages Owens purportedly sent her.  [R. 21-4 at 8; R. 21-1 at 28-29.]  Reder determined that Bowen's allegations were substantiated and concluded that Owens violated Dow's sexual harassment policy.  [R. 21-4 at 3.]

Parallel to this initial investigation, Owens made his own complaint against Reder.  [R. 21-1 at 33-36.]  In his complaint, Owens accused Reder of inappropriate behavior, including insulting him over his prescription glasses and ridiculing him over his speech.  *Id*.  In his report he noted that he felt she was biased against him, childish, and conducting a "character assassination" as opposed to an investigation.  *Id*.  Michelle Cliff was assigned to investigate Owens' complaint and interviewed him in late January 2023.  *Id*.  During that interview, Owens shared with Cliff that he had a "scan" of his phone as exculpatory evidence.  *Id*. at 35.  Owens told Cliff that this would prove the allegations of inappropriate Facebook messages were false and fabricated.  *Id*.  Cliff noted that "[n]o email, call, or other follow up was ever provided" on Owens claim.  *Id*.  A note was made in the case by Owens days after the interview, and after the case was closed, providing the contact information of Dan Jackman of Mobile Forensic Solutions – the individual who extracted Owens' phone data.  *Id*. at 36.  However, there is no evidence to suggest that, at this time, Owens made any further effort to get his exculpatory evidence into Dow's hands.

After concluding the investigations, Dow put together an Employee Review Meeting ("ERM") in March 2023 to determine what discipline was appropriate for Owens' purported – but internally substantiated – violation of Dow's sexual harassment policy.  [R. 21-4 at 3.]  The

ERM participants included Fulton, Threat Management Case Manager Jaclyn Parvin, Brita Johnson from Legal, Anton Chastang from Human Resources, Reder as the HR investigator, and Elizabeth Uhlhorn as the neutral.  [R. 21-2 at 5.]  The ERM participants discussed the Bowen complaint and Owens' misconduct, concerns over power imbalances between Owens and Bowen, and credibility issues they had with Owens.  *Id*.  The group did not have access to Owens' allegedly exculpatory evidence.  The members of the ERM unanimously voted to terminate Owens and he was fired on March 7, 2023.  [R. 21-2 at 5; R. 21-1 at 37.]

Following his termination, Owens finally followed up on figuring out how to get his evidence to Dow by reaching out to Anton Chastang, a Dow Human Resources Business Partner. [R. 21-1 at 38-43.]  After an email exchange between the two, Owens opened up a second, now post-termination complaint on April 24, 2023, accusing Bowen of "falsification of data" and contending that he had been wrongfully accused of sexual harassment.  *Id*. at 44-47.  In his complaint Owens made clear that he had evidence he viewed as exculpatory and because the complaint involved allegations of data falsification, and because Owens requested to send his cell phone data to Dow, Technology Investigator Chris Vergison was assigned to the case.  [R. 21-5 at 2-3.]

Vergison met with Owens and began investigating his complaint.  As part of that process, he obtained Owens' Facebook information from Owens and confirmed that at one point Owens and Bowen had been Facebook friends.  *Id*. at 3-5.  Based on Vergison's experience in law enforcement and with digital evidence, he knew that Facebook accounts are given a unique identification number that is effectively unspoofable.  *Id*. at 2-4.  He obtained Owens' unique identifier during their meeting and confirmed that identifier by reviewing the messages extracted from Owens' cellphone.  *Id*. at 4.  During a meeting with Bowen, Vergison had her screenshare

4

the messages she allegedly received from Owens. *Id*. at 4. Vergison was able to confirm that the Facebook account identifier number attached to the messages was Owens', confirming in Vergison's view that Owens had indeed sent the messages. *Id*. at 5. After doing so, Vergison informed Owens of his findings, setting off an acrimonious email exchange. [R. 21-1 at 60-67.] Owens disputed Vergison's conclusion and accused him of further bias toward Bowen, at which point Vergison told Owens "a lack of evidence on your phone does not automatically prove your innocence in this matter. You could have easily removed or deleted evidence prior to the phone extraction, therefore making it appear as though you never communicated with her." *Id*. at 62. Owens disputes the factual accuracy of Vergison's belief, contending that any messages would have indeed shown up on the phone scan. [R. 22 at 8-9; R. 22-11 at 2.] Notably, however, in his complaint Owens noted that the files he submitted are "all of the conversations that happened during the month of December (not including the conversation strings between myself and my mother, my brother, and my girlfriend)," which suggests withholding evidence from the phone scan was at least possible in part. *Id*. at 47. Vergison closed Owens' second complaint on May 17, 2023, having determined it was unsubstantiated. [R. 21-5 at 5; R. 21-1 at 44.]

This lawsuit followed, with Owens bringing claims of sex discrimination by Dow for terminating him based on Bowen's allegedly false allegations under Title VII and the Kentucky Civil Rights Act. [R. 1.] Owens also brought a claim of retaliation based on his initial complaint against Reder. *Id*.

## II

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a

matter of law. *See* Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "[T]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). "Instead, 'the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.'" *J.B-K.-1 v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 462 F. Supp. 3d 724, 731 (E.D. Ky. 2020), *aff'd sub nom. J. B-K. by E.B. v. Sec'y of Ky. Cabinet for Health & Fam. Servs.*, 48 F.4th 721 (6th Cir. 2022) (quoting *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

## A

When analyzing Title VII claims involving circumstantial evidence of discrimination, Courts apply the familiar *McDonnell Douglas* burden-shifting framework. First, the plaintiff must make out a prima facie case of discrimination, which requires that he show: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was treated differently from similarly situated employees who were not within

the protected class. *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 565 (6th Cir. 2012). If the plaintiff satisfies that test, the burden then shifts to the defendant to proffer a legitimate, non-discriminatory explanation for the adverse employment action the plaintiff suffered. *Id*. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's legitimate, nondiscriminatory explanation is merely a pretext for unlawful discrimination. *Id*. Pretext may be demonstrated by showing that the defendant's legitimate, nondiscriminatory reason (1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct. *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 258 (6th Cir. 2002). As the Kentucky Civil Rights act "mirrors" Title VII of the Civil Rights Act of 1964, courts use the same federal standards with both statutes. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000). Mr. Owens brings two claims, sex discrimination and retaliation.[1] The Court will consider each in turn.

## 1

Dow does not challenge that Owens is a member of a protected class, was qualified for his position, and suffered an adverse employment action when he was terminated. Therefore, the first hurdle for Owens is showing he was treated differently from similarly situated employees not within his protected class. The comparator Owens has identified appears to be Bowen, the other individual involved in the sexual harassment claims that underlie this lawsuit, and no others. [R. 22 at 12-14.] To establish that a non-protected employee is an appropriate

---

[1] In his Response, Owens suggests that he also made a disparate treatment claim that Dow simply failed to address. [R. 22 at 11.] As Dow rightly points out, Owens' sex discrimination claim *is* a disparate treatment claim as they are in fact the same thing. *Stewart v. Esper*, 815 F. App'x 8, 16 (6th Cir. 2020); *see also Rabidue v. Osceola Ref. Co., a Div. of Texas-Am. Petrochemicals*, 584 F. Supp. 419 (E.D. Mich. 1984), *aff'd*, 805 F.2d 611 (6th Cir. 1986) (describing discriminatory discharge claim as a "classic disparate treatment claim.") To the extent Owens confuses a disparate treatment claim with a disparate impact claim the Court notes that he never pleaded the latter. [R. 1.]

comparator, "the plaintiff [must] demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir. 1998). In the disciplinary context, the Sixth Circuit has held that this requires that the plaintiff and the proposed comparator have engaged in acts of "comparable seriousness." *Clayton v. Meijer, Inc.,* 281 F.3d 605, 611 (6th Cir. 2002). To make this assessment, courts have looked to certain factors, such as whether the individuals "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich,* 154 F.3d at 352 (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992)). The *Mitchell* factors, while useful, are not applicable in every circumstance and the court must ultimately make an "independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich*, 154 F.3d at 352. A plaintiff's burden at the prima facie stage is "not onerous" and "poses 'a burden easily met.'" *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 660 (6th Cir. 2000) (quoting *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).

In Defendant's view, Bowen is an inapposite comparator to Owens, for several reasons. [R. 21 at 15-16.] First, Bowen is a contractor and not a direct employee of Dow. [R. 21-3 at 2.] Second, Owens and Bowen appear to have had different direct supervisors. [R. 21-4 at 7-8.] Third, Owens was accused of sexual harassment and the claim against him was substantiated; the only accusations of any kind against Bowen were those made by Owens after his termination, namely that she had falsified the messages that were purportedly exchanged between the two. [R. 21-2 at 4; R. 21-1 at 44-47.]

8

The Defendant's factual assertions appear to be correct.  The record does not identify Bowen's supervisor and Owens, based on his citations to the record, appears to misread the Defendant's assertions in its Motion for Summary Judgment to suggest Josh Fulton was conclusively Bowen's supervisor.  [R. 22 at 13.]  The portions of the Defendant's Motion that Owens cites to, as well as further record evidence, establish that Josh Fulton was Owens' supervisor.  [R. 21 at 5; R. 21-4 at 5.]  The same evidence shows that Bowen reported her concerns of harassment by Owens to Fulton.  *Id*.  However, even drawing all justifiable inferences in favor of Owen, none of the evidence establishes that Bowen was herself supervised by Fulton.  Furthermore, Bowen was not a Dow employee.  [R. 21-2 at 4.]  Instead, she was a contractor with Kelly Services, a temp agency that would supply contract workers to various Dow locations in a variety of roles.  *Id*.  In fact, in her interview with Reder during the investigation Bowen detailed that her supervisor at Dow was Cory Kelly and her boss at Kelly Services was Paul Dermon.  [R. 21-4 at 7-8.]  Finally, Bowen was not, at least during the initial events that took place, the target of any workplace complaints, be that sexual harassment or otherwise. Owens' first complaint was directed at the investigator involved in following up on Bowen's claim of sexual harassment and his only issues with Bowen (at that time) were presented as part of that investigation.  [R. 21-1 at 33-36.]

However, there are some similarities between Owens and Bowen.  Both interacted with Fulton and Bowens made her complaint against Owens to Fulton. [R. 21-1 at 2-3.]   Both occasionally worked the same shift at Dow.  [R. 21-4 at 5.]  Both were subject to the same corporate values and policies, including the one Owens allegedly breached by sexually harassing Bowen.  Functionally, both were then accused of violating those values and policies – Owens via Bowen's sexual harassment complaint and Bowen via Owens' defense that she fabricated her

9

claims and the purported messages from Owens. After the Defendant's internal investigation, Owens was fired and Bowen was not.

While Owens' burden to establish his *prima facie* case is "not onerous," he has not carried that burden. *Cline,* 206 F.3d at 660 (6th Cir. 2000) (quotation omitted). Bowen and Owens had different supervisors and different positions. Additionally, Bowen was a contractor and not an employee like Owen. Most importantly, there is no evidence they were treated differently for similarly serious offenses. As the Court will detail below, Dow credibly believed, after investigation, Bowen's claims and found Owens' claims to ultimately be unsubstantiated. It would seem then, at least as Dow made their decision, that Bowen had seemingly done nothing warranting discipline at all. Bowen therefore seems to be an inapt comparator in any sense of the word.

Beyond Bowen, Owens' identified no other comparators, despite having sought such information in discovery. [R. 22 at 9.] Owens now complains that "DOW unilaterally limited production to the facility Owens worked at, where, incredibly, no other employee has ever violated or alleged a violation of its R&R Policy," and that other purportedly suspicious information was not produced during discovery. *Id.* . Yet the record reflects no attempts by Owens to compel or otherwise seek judicial intervention as to these alleged discovery issues and the Court will not at this late hour draw the inferences Owens wishes from the aspersions he casts on the discovery process. *Id.* at 9, 12-13. Accordingly, Owens has failed to make out his *prima facie* case by identifying a relevant comparator that was treated differently from himself.

**2**

Assuming Owens had made out a *prima facie* case, the burden then shifts to Dow to articulate a legitimate, non-discriminatory explanation for the adverse employment action the

plaintiff suffered. *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 565 (6th Cir. 2012). In this case, Dow contends that its legitimate, non-discriminatory reason for firing Owens is simple – he violated the company's sexual harassment policy. [R. 21 at 16.] Owens does not appear to contest that sexual harassment by an employee, if true, is a legitimate, non-discriminatory reason to terminate that employee. Indeed, the Sixth Circuit has repeatedly held that a violation of a company's sexual harassment policy is a legitimate non-discriminatory reason for termination. *Giles v. Norman Noble, Inc.*, 88 F. App'x 890, 895 (6th Cir. 2004); *White v. Simpson Indus., Inc.*, 1 F. App'x 462, 466 (6th Cir. 2001).

Dow having offered a legitimate, non-discriminatory reason for terminating Owens, the burden now shifts back to Owens to show that Dow's explanation is merely a pretext for unlawful discrimination. *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 565 (6th Cir. 2012). A plaintiff can demonstrate pretext by showing that the defendant's legitimate, nondiscriminatory reason (1) had no basis in fact, (2) did not actually motivate the defendant's conduct, or (3) was insufficient to warrant the challenged conduct. *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 379 (6th Cir. 2017). Owens argues that pretext is demonstrated by Dow deliberately ignoring exculpatory evidence in his favor and because Dow selectively enforced the very policy that prompted Owens' ouster. [R. 22 at 14-18.]

Owens' first argument, and indeed seemingly the crux of much of this dispute, is that he provided Dow with exculpatory evidence in the form of a digital scan of his phone that would have demonstrated he did not send the disputed messages to Bowen. While the overall sequence of events is described in greater detail above, after Bowen made her complaint Owens was interviewed as part of the investigation. [R. 21-1 at 8.] Bowen then provided investigators with the alleged messages between her and Owens. [R. 21-4 at 7-8; R. 21-1 at 26-29.] After his

11

interview, Owens mentioned having exculpatory evidence he claimed to possess during an interview following his complaint about how Reder handled the investigation. [R. 21-1 at 35.] Ultimately Dow did not review that evidence and created an "Employee Review Meeting" (ERM) which unanimously voted to terminate Owens. [R. 21-1 at 35; R. 21-2 at 3-4.]

To defend its decision, Dow turns to the "honest belief rule." The honest belief rule holds that "so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998). In order for the employer to be protected by the honest belief rule, it must demonstrate that it made a reasonably informed and considered decision before taking the adverse employment decision. *Seeger v. Cincinnati Bell Tele. Co., LLC,* 681 F.3d 274, 285 (6th Cir. 2012). As the Sixth Circuit explained in *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008), when determining whether a plaintiff has raised a genuine issue of material fact as to pretext based on a potentially incorrect or false explanation, the proper inquiry is not whether the plaintiff *actually* violated company policy, but whether the employer had an honestly held belief that the plaintiff violated company policy. The Sixth Circuit has also explained that the plaintiff's "disagreement with the facts uncovered in [the employer's] investigation does not create a genuine issue of material fact that would defeat summary judgment as long as an employer has an honest belief in its proffered nondiscriminatory reason." *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 598 (6th Cir. 2007). In essence the question is not directly whether it is Dow's evidence or Owens' exculpatory evidence that is accurate, but whether Dow's failure to consider that evidence before making its decision makes its decisional process "unworthy of credence." *Smith*, 155 F.3d at 808.

Examining the facts paints an unfortunate picture for Owens, even when viewed in the light most favorable to him as the non-movant. Certainly, a deeply flawed investigation may call into question the reliability of a company's decision. *Wright v. Univ. of Cincinnati*, 58 F. Supp. 3d 854, 861 (S.D. Ohio 2014) (taking issue with defendant ignoring evidence that favored the plaintiff); *Shazor v. Professional Trans. Mmgt., Ltd.,* 744 F.3d 948, 960–61 (6th Cir. 2014) (taking issue with an investigation that consisted only of interviewing one person about plaintiff's alleged misconduct); *Simmons v. American Apt. Mmgt. Co., Inc.,* 1 F.Supp.3d 838 (E.D. Tenn. 2014) (taking issue with a company that only interviewed witnesses known to have had conflicts with the plaintiff). But here Dow appeared to have done what it could to reconstruct what happened between Owens and Bowen. Owens was interviewed by Investigator Kathleen Reder. [R. 21-4 at 6-7.] Bowen was in turn interviewed by Reder. *Id.* at 7-9. Bowen then provided the alleged messages to Reder, showing that they appeared to come from Owens' Facebook account. [R. 21-4 at 7-8; R. 21-1 at 26-29.]

At the same time, Owens filed a complaint alleging he was treated unfairly in the initial investigation by Reder. [R. 21-1 at 33-36.] During the follow-up to his complaint, he shared with Investigator Michelle Cliff that he had a scan of his phone that would prove Bowen's allegations were false. *Id.* at 35. As Cliff noted, however, "[no] email, call or other follow up was ever provided on this." *Id.* Not only did Owens apparently not bring up his exculpatory evidence in the initial sexual harassment investigation, but he apparently also made little effort to get that exculpatory evidence into the hands of investigators during his later complaint. Despite Owens' characterizations, this is not a case where the company wholly ignored evidence and blithely proceeded ahead with a foregone conclusion. That is not to say the investigation was perfect, but the honest belief rule does not "require that the decisional process used by the

employer be optimal or that it left no stone unturned." *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998).

Subsequent events appear to further reinforce Dow's decision-making process. Following his termination, Owens finally began making attempts to provide his exculpatory evidence, which led him to file a second ethics complaint accusing Bowen of "falsifying data" and making up the sexual harassment allegations against him. [R. 21-1 at 39-47.] Another investigation was launched, with Chris Vergison, a Technology Investigator in Dow Silicones' Corporate Investigation Group, assigned as the investigator due to Owens' allegations of falsified data and his desire to send his cell phone data to Dow. [R. 21-5 at 1-4.] With Owens' exculpatory information made available to him, Vergison began investigating Owens' claim that the Facebook messages were falsified. *Id.* As part of that investigation, Vergison was able to confirm that the unique Facebook account identifier associated with the messages Bowen received was Owens' identifier. *Id.* As an experienced forensic examiner of electronic devices, Vergison was familiar with the program used to scan Owens' phone and noted in an email to Owens that "a lack of evidence on your phone does not automatically prove your innocence in this matter. You could have easily removed or deleted evidence prior to the phone extraction, therefore making it appear as though you never communicated with her." [R. 21-1 at 62.] Vergison further emphasized to Owens that, in his experienced view, a phone extraction "cannot give 100% certainty as to whether phone evidence was deleted and never recovered" because "[p]hone data is volatile and there is no guarantee of deleted date [sic] recovery from an extraction." *Id.* Combining these pieces of information, Vergison found Owens' second complaint to be unsubstantiated and determined that the disputed messages had in fact come from Owens' account. [R. 21-5 at 4.]

14

The overall picture, then, is of a robust investigation (or even a series of investigations) that interviewed both parties and fairly considered the evidence of sexual harassment that was presented. [R. 21-1 at 31; R. 21-4 at 5-9.] Exculpatory evidence was mentioned to investigators, but ultimately not provided by Owens in a timely fashion. [R. 21-1 at 35.] When Owens made later complaints, after being terminated, he was not rebuffed – instead Dow investigated those complaints. [R. 21-1 at 44-67.] In doing so, Dow utilized the same process of examining Owens' digital evidence and the Facebook messages themselves that it would have used in the first place, had Owens previously provided his exculpatory evidence. [R. 21-5 at 2-3.] That process appeared to justify Dow's prior termination of Owens. *Id*. at 2-4. Not only was the investigation not as flawed as Owens portrays, later facts in this case show that the "ignored" evidence would have had no effect on the initial outcome. Dow reasonably relied on the particularized facts that were before it when it conducted its initial investigation as required by the honest belief rule and Owen has failed to show that his firing was pretextual.

Owens also suggests that Dow's "selective enforcement of its own policies" indicates its decision to terminate him was pretextual. The core of Owens argument on this point is that "there was no precedent to terminate an employee under an unsubstantiated complaint" at Dow's facility. [R. 22 at 16.] Unpacking this argument reveals little that helps Owens. First, as discussed above, Bowen's complaint was in fact substantiated as far as Dow was concerned after it conducted a perfectly reasonable investigation. In effect, Owens' argument assumes that his "exculpatory evidence" would have made a difference. As we now know, it would not have. In any event, it is not a requirement that Dow's process be correct, only that Dow had an honest belief that its process was correct. *Smith v. Chrysler Corp.,* 155 F.3d 799, 806 (6th Cir. 1998)

Second, Owens' argument fundamentally seeks to substitute his judgment, or this Court's, about appropriate discipline in this case for Dow's own judgment.  There is no requirement in the law that Dow must give credibly accused harassers a second chance, nor is there a prohibition on terminating employees for the first such incident at a given business location.  The evidence also does not establish that these forgive-and-forget policies were adopted by Dow and ignored for the purpose of terminating Owens.  Indeed, Owens has not identified any individuals who were similarly accused of sexual harassment at Dow, with substantiated complaints, that were disciplined in another fashion.  Having determined that Dow is protected by the honest belief rule, the Court will not engage in second order meddling to determine the appropriate punishment for alleged sexual harassers in the Dow workplace. Because Owens cannot overcome the honest belief rule and show that Dow's legitimate, non-discriminatory reason of firing him for violating its sexual harassment policy was pretextual, Dow is entitled to summary judgment on Owens' claim of sex discrimination.

**B**

The Court now examines Owens' claim of retaliation.  Again following the familiar *McDonnell Douglas* framework, a *prima facie* case of retaliation requires a plaintiff to establish that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 639 (6th Cir. 2009).  If the plaintiff meets this prima facie burden, the burden shifting proceeds similarly to the other claims Owens has addressed – the defendant must articulate a legitimate,

nondiscriminatory reason for the action and the plaintiff must present evidence that this reason was mere pretext. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).

Owens made two complaints during his time at Dow that form the basis of his retaliation claim. The first was during the initial investigation, where he complained that the individual investigating Bowen's charges against him, Kathleen Reder, was "biased," "childish, "inappropriate," and essentially just plain rude. [R. 21-1 at 35.] The second was roughly a month and a half after his termination, where he complained that Bowen had falsified data and wrongfully accused him of sexual harassment. [R. 21-1 at 45.] The Court will consider each in turn.

## 1

As to Owens' first complaint, Dow contends that Owens did not engage in a protected activity by filing his complaint. An individual's complaint is only "protected activity" if it alleges some unlawful action under the KCRA or Title VII. *Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 495 (6th Cir. 2017) (citing *Booker v. Brown & Williamson Tobacco Co.*, 897 F.2d 1304, 1313 (6th Cir. 1989)). In his response, Owens only references his second post-termination complaint with regards to his retaliation claim and presents no argument on this front. [R. 22 at 19-21.] The Court will not go so far as to suggest, as Dow contends, that this somehow suggests "Owens has agreed with Dow Silicones' position as to the first Owens Complaint," [R. 23 at 11], but ultimately thinks Dow has the better of this argument.

"[A]n employee 'may not invoke the protections of the Act by making a vague charge of discrimination.'" *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020) (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012)). Even drawing all inferences in favor of Owens, his first complaint, at best, makes just such vague charges. Owens complained about

Reder's rudeness, including insults over his prescription glasses and body language during their interview.  [R. 21-1 at 35.]  Indeed, the investigator of Owens' first complaint appeared to believe that he was complaining about Reder's "rude and disrespectful" behavior and "did not view any of his complaints as being about anything more than a standard process for implicated party interviews."  *Id*. at 33, 35.  When asked during his deposition if, prior to his termination, he ever made a complaint to anyone at Dow that he thought he was being discriminated against because of his sex, Owens replied "No."  *Id*. at 17.  This was not Owens taking a stand against discriminatory policies, it was a vague complaint over legally permissible, albeit socially frowned upon, rudeness in the workplace.  *See generally Handlon v. Rite Aid Servs.*, LLC, 513 F. App'x 523, 528 (6th Cir. 2013) (analyzing Michigan state claims under Title VII framework and evincing skepticism that vague complaints of rude behavior and "discriminative" treatment were protected activities); *Leary v. Ford Motor Co.*, 2017 WL 1829785 at *8 (W.D. Ky. May 5, 2017) ("a general complaint of unfair treatment is insufficient to establish protected activity under Title VII,"); *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (per curiam) (collecting cases to support a finding that a complaint about a "hostile work environment" or unfair treatment did not comprise a "protected activity" under Title VII); *Willoughby v. Allstate Ins. Co.*, 104 F. App'x 528, 530-531 (6th Cir. 2004) (finding that a long letter containing only passing references to protected activities under Title VII was really "contesting the correctness of a decision made by his employer" rather than asserting discrimination.)  Even if Owens believed he was making complaints about sex discrimination, which his deposition suggests he did not, the remarks at issue in his first complaint are so vague that they did not effectively put Dow on notice that his complaints were about impermissible sex discrimination.

In any event, even assuming Owens could make out his *prima facie* case of retaliation based on his first complaint, he cannot show that his termination was pretextual. As discussed in more detail above, Owens was fired for violating Dow's sexual harassment policy after a fair and reasonably thorough investigation, a decision supported by the evidence Dow had available to it at the time. There is no evidence to suggest Owens' first complaint had any impact on the investigation or his termination whatsoever.

**2**

The Court now turns to Owens' second, post-termination complaint. As Dow rightly points out, Owens made no mention of this second complaint to Dow in his Complaint in this case. [R. 1.] Instead, Owens' pleadings were directed at his first complaint about Reder's treatment of him during the initial investigation, including his claim of retaliation. *Id.* at 3-4. The Court reiterates that an individual's complaint is only "protected activity" if it alleges some unlawful action under the KCRA or Title VII. *Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 495 (6th Cir. 2017) (citing *Booker v. Brown & Williamson Tobacco Co.*, 897 F.2d 1304, 1313 (6th Cir. 1989)). In this fashion, Owens' second complaint fairs even worse than his first. Made months after his termination, the complaint alleges falsification of data by Bowen and wrongful accusations of sexual harassment. [R. 21-1 at 45.] At no point does Owen suggest this was due to his sex or otherwise discriminatory or retaliatory in any way. Indeed, in his deposition Owens makes clear that he opened this complaint in order to "to get [Owens'] evidence to Dow so [he] could get [his] job back," not to apprise Dow of any alleged discrimination that had occurred. *Id.* at 17. This is insufficient to show Owens engaged in an activity protected by Title VII.

19

More importantly, by the time Owens made his second complaint he had already been terminated.  In order for his claim to succeed, he must therefore identify some other adverse employment action Dow took as retaliation. *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 639 (6th Cir. 2009).  Owens now suggests this was Dow's failure to rehire him following his complaint.  [R. 22 at 19-20.]  Setting aside any issues of pretext or causality, or even Owens' failure to even reapply at Dow, the insurmountable hurdle for Owens is that he never pled a failure to rehire in this case.  [R. 1.]  "A plaintiff may not defeat summary judgment by asserting a claim he did not plead in the complaint."  *Spengler v. Worthington Cylinders*, 514 F.Supp.2d 1011, 1017 (S.D. Ohio 2007) (citing *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788–89 (6th Cir. 2005) (affirming a district court's refusal to consider a new claim that was raised for the first time in opposition to summary judgment)); *see also White v. Humana Ins. Co.*, 2010 WL 5139232 at *2 (W.D. Ky. Dec. 10, 2010).  Owens' rather short complaint makes clear that he is bringing claims based on his termination; it does not refer to his second post-termination complaint or any failure to rehire at all.  He cannot now predicate his retaliation claim on such a theory.  As *Tucker* makes clear, "[t]o permit a plaintiff to do otherwise would subject defendants to unfair surprise."  *Tucker,* 407 F.3d at 788 (6th Cir. 2005) (citing *Guiffre v. Local Lodge No. 1124,* No. 90–3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery")); *see also EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 854 (6th Cir. 2001) (stating that even under the old notice-pleading regime, the Federal Rules of Civil Procedure required "that the complaint give the defendant fair

notice of the claim and its supporting facts"). For the reasons set forth above, Owens' retaliation claim therefore also fails.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Dow Silicones Corporation's Motion for Summary Judgment **[R. 21]** is **GRANTED;**

2. This matter is **DISMISSED** and **STRICKEN** from the Court's active docket; and

3. An accompanying judgment shall be issued forthwith.

This the 19th day of March, 2025.

Gregory F. Van Tatenhove
United States District Judge